# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CHARLES CORBISIERO, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 09 C 1587 |
| BANK OF AMERICA CORPORATION, et al., | ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants' motion to dismiss Counts II, III, V, and VI. For the reasons stated below, we grant in part and deny in part the partial motion to dismiss.

## BACKGROUND

Plaintiff Charles Corbisiero (Corbisiero) alleges that he was a long-time loyal employee of LaSalle Bank Corporation (LaSalle). LaSalle allegedly provided its employees with employee benefit plans which included the Long Term Incentive Plan (LTIP), the Corporate Incentive Plan (CIP), and severance plans. Corbisiero

1

contends that in May 2007, LaSalle offered a new CIP in a notification letter (Notification Letter), which he believed to be a separate contract rather than a plan covered by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*, like the prior CIP. Defendant Bank of America (BOA) acquired LaSalle and then allegedly terminated Corbisiero's employment. Corbisiero contends that BOA refused to pay him the vested bonuses and other benefits he was owed under the LTIP, the Notification Letter, and severance plans unless he signed a general release that included a non-compete agreement. Corbisiero claims that he was never before told that if he was terminated he would have to sign a release including a non-compete agreement. He also contends that the non-compete agreement is unconscionable.

Corbisiero includes in his complaint claims brought under ERISA for wrongful denial of benefits under the LTIP and severance plans (Count I), state law breach of contract claims based on a breach of the terms of the Notification Letter (Count II), a claim for attorney fees under the Illinois Attorneys Fees in Wage Actions Act (AFWAA), 705 ILCS 225/1 *et seq.* (Count III), an alternative claim under ERISA for the wrongful denial of benefits under the Notification Letter (Count IV), an equitable estoppel ERISA claim to stop denial of benefits under the LTIP and severance plans (Count V), and a claim in the alternative under ERISA for equitable

estoppel to stop denial of benefits under the Notification Letter (Count VI). Defendants move to dismiss Counts II, III, V and VI.

## LEGAL STANDARD

In ruling on a motion to dismiss, a court must "take all of the factual allegations in the complaint as true" and make reasonable inferences in favor of the plaintiff. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (U.S. 2009); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). To defeat a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949 (internal quotations omitted) (emphasis in original)(quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (U.S. 2007)); *Hecker v. Deere & Co.*, 569 F.3d 708, 710-11 (7th Cir. 2009)(stating that "*Iqbal* reinforces *Twombly*'s message that '[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged'")(quoting in part *Iqbal*, 129 S.Ct. at 1949).

A complaint that contains factual allegations that are "merely consistent with a defendant's liability, . . . stops short of the line between possibility and plausibility of

entitlement to relief." *Iqbal*, 129 S.Ct. at 1949 (internal quotations omitted); *see also Hecker*, 569 F.3d at 710-11 (stating that the Court in *Iqbal* "explained further that 'where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not show[n]-that the pleader is entitled to relief'")(quoting in part *Iqbal*, 129 S.Ct. at 1949). A plaintiff is not required to "plead facts that, if true, establish each element of a 'cause of action. . . .'" *See Sanjuan v. Amer. Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)(stating that "[a]t this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint" and that "[m]atching facts against legal elements comes later").

## DISCUSSION

I. Breach of Contract Claims (Count II)

Defendants argue that the breach of contract claims in Count II are preempted by ERISA. ERISA contains a "very broad preemption clause. . . ." *Wal-Mart Stores, Inc. Associates' Health and Welfare Plan v. Wells*, 213 F.3d 398, 401 (7th Cir. 2000). The ERISA preemption provision provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of" ERISA "and not exempt under section

1003(b) of" ERISA.  29 U.S.C. § 1144(a); *see also Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004)(stating that "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted"); *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 142 (1990)(explaining the objectives behind the broad scope of ERISA preemption to resolve claims under the comprehensive and unified ERISA requirements); *Vallone v. CNA Financial Corp.*, 375 F.3d 623, 638 (7th Cir. 2004)(indicating that "claims by a beneficiary for wrongful denial of benefits (no matter how they are styled) . . . fall directly under . . . ERISA, which provides an exclusive federal cause of action for resolution of such disputes")(internal quotations omitted).

Corbisiero argues that the Notification Letter upon which his breach of contract claims are based is a new and separate contract from the CIP.  Corbisiero does not contest Defendants' assertion that the prior CIP was an ERISA plan.  The Notification Letter is attached as an exhibit to the complaint and can be considered for the purposes of the instant motion to dismiss.  *Massey v. Merrill Lynch & Co., Inc.*, 464 F.3d 642, 645 (7th Cir. 2006)(stating that a court can "consider the exhibits attached to a complaint" for a motion to dismiss).  Defendants, in support of their motion to dismiss, have also provided as an exhibit the CIP, which is widely

5

referenced in the complaint and can be considered in ruling on the instant motion to dismiss. *Venture Associates Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)(stating that "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to" the claim).

Corbisiero argues that Defendants incorrectly assert that the Notification Letter is an ERISA plan. Defendants, however, point out in their reply that it was never their contention that the Notification Letter was a separate ERISA plan. (Reply 3). Defendants' position is that the Notification Letter related to an ERISA plan. Defendants argue that the Notification Letter directly relates to provisions of the CIP, which Corbisiero acknowledges is an ERISA plan, and the Notification Letter requires an interpretation of the CIP. ERISA preempts a state law claim if a resolution of the claim "requires the court to interpret or apply the terms of an employee benefit plan. . . ." *Collins v. Ralston Purina Co.*, 147 F.3d 592, 595 (7th Cir. 1998).

The Notification Letter sent to Corbisiero specifically references the CIP repeatedly. (Compl. Ex. 3). In addition, the CIP specifically requires the administrator of the CIP to send participants a "Notification Letter" containing the same information that was included in the Notification Letter sent to Corbisiero. (D.

Ex. C: Par. 5). Thus, the Notification Letter, which is explicitly mentioned in the CIP, was merely part of the ongoing obligations owed by the CIP administrator. The CIP also explains that such a "Notification Letter" is required to be sent each year to apprise participants of certain information for that year. (D. Ex. C: Par. 5). Thus, the fact that the Notification Letter sent to Corbisiero referenced updated information concerning Corbisiero's benefits does not mean that the letter was a new and separate agreement.

Although Corbisiero contends that the Notification Letter should be deemed a new and separate contract, such a conclusion is not supported by the record. It is clear that the Notification Letter did not contain all the pertinent information in light of the fact that it indicates that it is presenting a "Summary" of the 2007 CIP. (Compl. Ex. 3). The Notification Letter also invites the reader to attend webcasts to "learn more about the plans." (Compl. Ex. 3). In addition, the Notification Letter addresses issues such as eligibility, payment, and amount, which can only be resolved by referencing and interpreting the CIP itself.

Corbisiero also argues that the Notification Letter calls for a simple one-time lump sum payment, which would not be covered by ERISA. In regard to a severance plan, "[t]he decisive inquiry in determining whether a severance plan falls within ERISA's coverage is whether the plan requires an ongoing administrative program to

meet the employer's obligation." *Bowles v. Quantum Chemical Co.*, 266 F.3d 622, 631 (7th Cir. 2001). ERISA will apply when a "plan potentially places periodic demands on [an employer's] assets that create a need for financial coordination and control," but will not apply when "[t]he requirement of a one-time, lump-sum payment triggered by a single event requires no administrative scheme whatsoever to meet the employer's obligation." *Id.* (citing *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 11-12 (1987)).

Language included in the Notification Letter and the CIP indicate that the bonus referenced in the Notification Letter was part of an ongoing CIP, required an administrative scheme to manage, and did not involve a simple straightforward calculation. The Notification Letter provides that "[t]he design of the CIP has been adjusted to better align the plan with our Performance Contract and the BU NA Rewards Strategy." (Compl. Ex. 3: 1). Such language indicates that this is not the first CIP but rather a continuation of a previously implemented plan, and thus the plan was not a one-time bonus. In addition, the payment referenced in the Notification Letter that Corbisiero's bonus would be 50% of his base salary was not easily calculated and required an administrative scheme. (Compl. Ex. 3: 1, 3). The Notification Letter indicates that "[e]ach CIP eligible employee has been given an incentive target," that the "CIP targets were determined based on a market

8

assessment of each officer level position," and that "[e]ach officer position was matched to relevant market data by a team" of consultants. (Compl. Ex. 3: 1, 3). The Notification Letter also states that "[t]his team ensured each job was appropriately described and matched to the requirements of similar jobs in comparator companies." (Compl. Ex. 3: 3). Based on such statements, the Notification Letter clearly involved individualized assessments of each employee's position to determine the employee's bonus amount.

The Notification Letter also involved individualized assessments to determine whether the bonus would be granted. The plan summary in the Notification Letter provides that "[a]n individual's CIP payout, however, is *determined by that person's individual and team performance* against identified SMART objectives" and one question posed in the summary FAQ asks: "Does the *individual performance assessment* include the Compliance Gatekeeper?" (emphasis added) (Compl. Ex. 3: 4); *see Bowles*, 266 F.3d at 632 (indicating that ERISA would not control where "the administrator was required simply to make an arithmetical computation"); *Collins*, 147 F.3d at 596 (referring to the "prospect of multiplicity and record-keeping that distinguishes [the plaintiff's] case from the one-time, routine disbursement facing the Court in *Fort Halifax*"). Thus, the Notification Letter cannot stand alone as a separate contract that is ungoverned by ERISA. The Notification Letter goes hand in

9

hand with the CIP, which is an ERISA plan and is merely part of the yearly process anticipated in the CIP. Based on the above, the Notification Letter clearly relates to the CIP, which is an ERISA plan and therefore, the breach of contract claims based on the Notification Letter are preempted by ERISA. Therefore, we grant Defendants' motion to dismiss the breach of contract claims (Count II).

II.  AFWAA Claims (Count III)

Defendants argue the AFWAA claims in Count III must be dismissed in light of the preemption of Count II. Corbisiero only seeks attorney fees under the AFWAA in relation to Count II (Compl. Par. 85), which, as discussed above, has been dismissed. Corbisiero failed to provide any argument for retaining the AFWAA claim if Count II was dismissed. Therefore, we grant Defendants' motion to dismiss the AFWAA claim (Count III).

III.  Equitable Estoppel Claims (Counts V and VI)

Defendants argue that the equitable estoppel claims should be dismissed, arguing that Corbisiero has failed to allege sufficient facts to show that the claims are based on anything other than speculation. To prevail on an ERISA equitable estoppel claim, plaintiffs are generally required to establish "(1) a knowing

misrepresentation; (2) made in writing; (3) reasonable reliance on that representation by them; (4) to their detriment." *Kannapien v. Quaker Oats Co.*, 507 F.3d 629, 636 (7th Cir. 2007). One exception to such elements is "when plan documents are ambiguous or misleading, in which case oral representations as to the meaning of the documents may be relevant." *Vallone*, 375 F.3d at 639 (citing *Bowerman v. Wal-Mart Stores*, 226 F.3d 574, 588 (7th Cir. 2000)).

Defendants argue that Corbisiero has failed to point to any misrepresentation made in writing to Corbisiero and argue that Corbisiero cannot rely upon oral representations. Corbisiero contends that he is basing his equitable estoppel claims upon the written summary plan description that he was given when be began working for LaSalle. Corbisiero alleges in his complaint that he was shown in writing the release he would need to sign for his severance benefits and it did not include a non-compete agreement. (Compl. Par. 35-38, 44-53). Corbisiero contends that Defendant intentionally and in bad faith omitted the non-compete agreement to deceive Corbisiero. While Defendants argue that there is a lack of allegations to show bad faith, it is premature at this juncture to resolve such factual issues. Also, whether Defendants merely made a clerical error in omitting the non-compete agreement or whether it was a knowing misrepresentation are factual issues that cannot be resolved at this juncture. *Panaras v. Liquid Carbonic Industries Corp.*, 74

F.3d 786, 791 (7th Cir. 1996)(stating that "[m]atters such as bad faith, concealment and prejudice require, for the most part, a highly fact-specific inquiry" and that "[i]t will perhaps be a rare case in which a plaintiff's allegations of exceptional circumstances surrounding an employer's violations of the ERISA disclosure requirements will be appropriately resolved on a Rule 12(b)(6) motion"). Corbisiero also indicates that the omission of the non-compete release from documents presented to him lured him to continue working for LaSalle and BOA, thus preventing him from seeking other more beneficial employment. (Compl. Par. 101, 111). As Corbisiero points out, the Notification Letter explains that the purpose of such plans was to "ensure that the bank [could] attract and retain top-quality employees and remain competitive. . . ." (Compl. Ex. 3: 1). Corbisiero has presented sufficient allegations to plausibly suggest a right to relief for equitable estoppel. Based upon the record presented in this case, it is premature to dismiss the equitable estoppel claims. While it is true that generally, "employers may freely alter or eliminate" welfare benefit "plans without violating ERISA," *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 978 (7th Cir. 1999), the alleged bait-and-switch scheme at least on its face is sufficient to state a claim at this juncture. We note, however, that at the summary judgment stage, Corbisiero will need to point to sufficient evidence to fully articulate and support such a claim and show that the alleged misrepresentations and

ERISA violations are of the type that could support an equitable estoppel claim. *See Jackson*, 176 F.3d at 979 (stating that "[u]nder ERISA, technical violations do not create a right to monetary relief"); *Panaras*, 74 F.3d at 791-92 (stating that "a claim for monetary benefits in a suit based on technical violations of the notice provisions will be awarded only in exceptional circumstances involving bad faith, intentional concealment or prejudice to the employee")(internal quotation omitted). Therefore, we deny Defendants' motion to dismiss the equitable estoppel claims (Counts V and VI).

IV. Jury Demand

Corbisiero contends that he is entitled to a jury trial only for his breach of contract claim (Count II). (Ans. 15). Corbisiero agrees that he would not be entitled to a jury if Count II was dismissed. (Ans. 15). As Count II has been dismissed, he is not entitled to a jury trial.

## CONCLUSION

Based on the foregoing analysis, we grant Defendants' motion to dismiss Counts II and III and strike the jury demand. We also deny Defendants' motion to dismiss Counts V and VI.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: July 30, 2009