# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CHARLES CORBISIERO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 09 C 1587 |
| | ) |
| BANK OF AMERICA CORPORATION, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This is a denial of benefits action brought by Plaintiff Charles Corbisiero (Corbisiero) in part under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.* Corbisiero brought the instant action contending that he was employed by LaSalle Bank Corporation (LaSalle) and was promised certain benefits while employed at LaSalle. Corbisiero contends that Defendant Bank of America Corporation (BOA) purchased LaSalle's parent company, terminated his employment, and improperly denied him benefits owed to him under a severance plan and two bonus plans.

Corbisiero included in his complaint ERISA wrongful denial of benefits

1

claims (Count I), state law breach of contract claims (Count II), a claim for attorney's fees under the Illinois Attorneys Fees in Wage Actions Act, 705 ILCS 225/1 *et seq.* (Count III), an alternative claim under ERISA for the wrongful denial of benefits (Count IV), an equitable estoppel ERISA claim to stop denial of benefits (Count V), and a claim in the alternative under ERISA for equitable estoppel to stop denial of benefits (Count VI). Defendants moved to dismiss Counts II, III, V and VI. The court granted Defendants' motion to dismiss Counts II and III. The court denied Defendants' motion to dismiss Counts V and VI. Counts I, IV, V, and VI thus remain alive in this case.

The parties have agreed to a resolution of the remaining Counts pursuant to Federal Rule of Civil Procedure 52, based on the filings of the parties and the administrative record. The Court also gave the parties an opportunity to file proposed findings of fact and conclusions of law, and both sides have filed such documents. We have reviewed and considered the administrative record and all of the documents submitted to the court by the parties. We find that Defendants should prevail in this matter on all Counts and enter judgment in their favor.

Pursuant to Federal Rule of Civil Procedure 52, "[i]n an action tried on the facts without a jury . . ., the court must find the facts specially and state its conclusions of law separately." *Id.* The findings of fact and conclusions of law

"may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision filed by the court." *Id.* Upon issuing the findings of fact and conclusions of law, "[j]udgment must be entered under" Federal Rule of Civil Procedure 58. *Id.*

## FINDINGS OF FACT

1. Corbisiero was a long-time employee of LaSalle.

2. While employed at LaSalle, Corbisiero was eligible for benefits under the ABN AMRO Group Severance Pay Plan (ABN Severance Plan), and under two bonus plans referred to as the ABN AMRO Group Long Term Incentive Plan (LTIP) and the ABN AMRO Group Corporate Incentive Plan (CIP).

3. The ABN Severance Plan required that employees sign a waiver and release agreement in order to be eligible for severance benefits. (AR 52, 59).

4. In the ABN Severance Plan, LaSalle "reserv[ed] the right in its sole discretion to amend or terminate the Plan at any time in writing. . . ., provided, however, that no amendment nor termination shall reduce severance which have commenced being provided to an eligible employee." (AR 60).

5.  LaSalle sent Corbisiero an undated letter from Robert J. Moore concerning benefits offered in the CIP. (Notification Letter). The Notification Letter, which is explicitly mentioned in the CIP, was part of the CIP Administrator's obligations to apprise participants of certain information for each year.

6.  On October 1, 2007, BOA purchased the parent company of LaSalle and the ABN Severance Plan was frozen as part of BOA's purchase. No employees could utilize the plan after the purchase and instead participated in the BOA Corporate Severance Program (CSP), which was known at one point as the "Bank of America Transition Assistance Policy." (AR 46-47).

7.  A provision of the CSP provided the following: "The Committee shall have discretionary authority to determine eligibility for and to construe the terms of the Plan, and shall have such other discretionary authority as may be necessary to enable it to discharge its responsibilities under the Plan, including, but not limited to, the power to [r]esolve disputes concerning eligibility and participation in the Plan and the amount of transitional assistance, including severance pay, [and] the ability to make factual determinations." (AR 132). The CSP also provides that "[t]he decision of the Committee . . . shall be final and binding on all parties . . . ." (AR 132).

8.  The ABN Severance Plan, which LaSalle employees were subject to prior to

the purchase of LaSalle's parent company by BOA, provided discretionary authority to the administrator. (AR 59-60, 81).

9.  Under the CIP and LTIP, generally, in order for an employee to receive bonus benefits, the employee needed to be employed on the payment date, which was a date in the first quarter following the end of the plan year. One of the exceptions to the general rule was that an employee could receive the CIP and LTIP bonuses as part of severance benefits.

10. Under the terms of the CSP, the severance exception was only allowed if the employee met the severance eligibility requirements, which included signing a waiver and release agreement.

11. Corbisiero's employment was terminated effective December 15, 2007, and he refused to sign the waiver and release agreement (CSP Agreement) which was necessary in order to be eligible to receive severance benefits. Corbisiero objected to the non-solicitation provision in the CSP Agreement.

12. The non-solicitation provision was not a "world-wide" "non-compete" agreement as Corbisiero contends. (Ans. 10, 12, 20-21). The provision prohibited solicitation, not competition and did not prohibit Corbisiero from working in the same field. (AR 35-38). The provision also only limited

Corbisiero's contact with BOA's customers, and limited such contact only for 12 months.

13. Corbisiero applied for benefits under the LTIP and CIP in a letter dated January 15, 2008, and BOA responded with a letter that gave Corbisiero additional time to sign the CSP Agreement. (AR 30-32).

14. Corbisiero then made a "formal claim for benefits" on February 6, 2008, (AR 24-25), and on May 6, 2008, the plan administrator (Administrator) denied the claim, informing Corbisiero that the LTIP and CIP were not available to employees whose employment terminated before the end of year unless they signed the CSP Agreement. (AR 13-19).

15. The Administrator also informed Corbisiero that the October 2007 CSP Guide, on which Corbisiero was, in part, relying, merely stated that BOA would honor bonus guarantees made.

16. On July 18, 2008, Corbisiero appealed to the BOA Benefits Appeals Committee (Committee). (AR 9-10).

17. On September 17, 2008, the Committee affirmed the denial of Corbisiero's claim. (AR 1-8).

18. The Committee found that Corbisiero had participated in the CSP, not the ABN Severance Plan since the ABN Severance Plan ceased when BOA purchased the parent company of LaSalle. The Committee also found that Corbisiero failed to meet the eligibility requirements for the CSP severance exception since Corbisiero did not sign the CSP Agreement.

19. The Committee rejected Corbisiero's reliance on the Notification Letter and concluded that the letter did not alter the CSP requirements for Corbisiero. (AR 6).

20. Corbisiero was represented by an attorney during his dealings with the Administrator and Committee through the entire claim process.

21. Corbisiero did not include in his formal claim or appeal before the Administrator or Committee the argument that the non-solicitation clause in the CSP Agreement was overbroad and therefore invalid and unenforceable. (AR 9-10, 24-25).

22. Corbisiero did not include in his formal claim or appeal before the Administrator or Committee the argument that the non-solicitation clause was invalid due to a lack of consideration. (AR 9-10, 24-25).

23. Corbisiero did not include in his formal claim or appeal before the Administrator or Committee the estoppel argument that is the basis of Count V or VI in this action. (AR 9-10, 24-25).

24. The news release attached as Exhibit 5 to Corbisiero's response to Defendants' motion for judgment, which Corbisiero presents to support his estoppel claim in this case was not presented to the Administrator or the Committee.

25. On March 13, 2009, Corbisiero filed the instant action in federal court against BOA and Bank of America, N.A., as Trustee of Bank of America Group Benefits Program.

## CONCLUSIONS OF LAW

1. The parties have agreed to a trial on the papers in this case. Defendants filed a motion seeking a judgment pursuant to Federal Rule of Civil Procedure 52, affirming the Administrator's decision. Corbisiero filed a response brief requesting that the court deny Defendants' motion and enter a ruling reversing the Administrator's decision. (Resp. 21-22). The court provided the parties with an opportunity to file proposed findings of fact and conclusions of law, and both sides filed such documents. Thus, the parties have agreed to a "trial

on the papers" in this matter pursuant to Federal Rule of Civil Procedure 52. *See, e.g., White v. Airline Pilots Ass'n, Intern.*, 364 F.Supp.2d 747, 750-51 (N.D. Ill. 2005)(conducting "trial on the papers" under arbitrary and capricious standard of review and noting that "[t]he parties agreed to proceed in th[at] manner and to waive their right to present oral testimony").

2. A "trial on the papers" is more closely related to "a bench trial than to a motion for summary judgment, and is therefore governed by Federal Rule of Civil Procedure 52." *Levin v. Sun Life Assur. Co. of Canada*, 2008 WL 834432, at *1 (N.D. Ill. 2008); *see also White*, 364 F.Supp.2d at 750-51 (conducting "a trial on the papers in which the parties have submitted briefs and supporting exhibits which constitute[d] the record in th[at] case"); *Sullivan v. Bornemann,* 384 F.3d 372, 375 (7th Cir. 2004)(stating that for a judgment based on stipulated facts, "the proper standard of review that governs this procedure, more akin to a bench trial than anything else, is found in Federal Rule of Civil Procedure 52(a)").

3. Pursuant to 29 U.S.C. § 1132(a)(1)(B), "[a] civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan. . . ." *Id.*

9

4. Pursuant to *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101 (1989), "a denial of benefits is to be reviewed de novo 'unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'" *Sperandeo v. Lorillard Tobacco Co., Inc.*, 460 F.3d 866, 870 (7th Cir. 2006)(quoting in part *Firestone,* 489 U.S. at 115).

5. Where the plan administrator is given discretionary authority, "the court reviews . . . denial of benefits under the arbitrary and capricious standard." *Williams v. Aetna Life Ins. Co.*, 509 F.3d 317, 321 (7th Cir. 2007); *see also Hess v. Reg-Ellen Mach. Tool Corp. Employee Stock Ownership Plan*, 502 F.3d 725, 727 (7th Cir. 2007)(stating that "[i]n ERISA cases, if the plan grants to its administrator the discretion to construe the plan's terms, then the district court must review a denial of benefits deferentially, asking only whether the plan's decision was arbitrary or capricious").

6. The CSP at issue in the instant action provides the Administrator with discretionary authority and therefore, the proper standard of review is the arbitrary and capricious standard. Corbisiero concedes that this is the proper standard of review in this case for all issues except as to the issue of whether the non-solicitation clause in the CSP Agreement was overbroad and invalid, and therefore unenforceable. (P Prop. Concl. L Par. 1).

7. Under the "highly deferential arbitrary and capricious standard, the administrator's decision will only be overturned if it is downright unreasonable." *Williams*, 509 F.3d at 321-22 (internal quotations omitted). However, although the standard is a deferential one, "it is not a rubber stamp and a denial of benefits will not be upheld when there is an absence of reasoning in the record to support it." *Id.*

8. Under the arbitrary and capricious standard, the decision of a plan arbitrator should be upheld "as long as (1) it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, (2) the decision is based on a reasonable explanation of relevant plan documents, or (3) the administrator has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem." *Speciale v. Blue Cross and Blue Shield Ass'n*, 538 F.3d 615, 621 (7th Cir. 2008)(internal quotations omitted)(quoting *Sisto v. Ameritech Sickness & Accident Disability Benefit Plan,* 429 F.3d 698, 700 (7th Cir. 2005)).

9. There is a potential conflict of interest "where it is the employer that both funds the plan and evaluates the claims." *Metropolitan Life Ins. Co. v. Glenn*, 128 S.Ct. 2343, 2348 (2008). However, it is not "the existence of a conflict of interest-which is a given in almost all ERISA cases-but the *gravity* of the conflict, as inferred from the circumstances, that is critical." *Marrs v.*

*Motorola, Inc.*, 577 F.3d 783, 789 (7th Cir. 2009)(emphasis in original)(noting that in *Metropolitan Life Ins. Co.*, the Court mentioned that "if the plan administrator has no improper motive, the existence of a conflict of interest cannot have affected the denial of benefits"). Corbisiero has not pointed to evidence indicating any actual conflict of interest impacted the Arbitrator's decision or the Committee's decision in this case.

10. The record shows that the Administrator considered the record and formed a reasoned decision based on the terms of the plans at issue. Although Corbisiero argues that the Administrator could have made different interpretations based on the pertinent plans, Corbisiero has not shown that the Administrator's decision to deny Corbisiero's claim was downright unreasonable. The Administrator reasonably concluded that the CSP rather than the ABN Severance Plan applied to Corbisiero, and the Administrator reasonably concluded that Corbisiero was not eligible for severance benefits since he refused to sign the CSP Agreement. Even under the *de novo* standard of review, the Administrator's decision would be found to be reasonable and affirmed.

11. Corbisiero contends that there was some unfairness in the change of his severance plan from the ABN Severance Plan to the CSP with the purchase of LaSalle's parent company by BOA. However, Corbisiero has not shown that

the alteration of the severance plan for LaSalle employees, such as Corbisiero, after the purchase by BOA, violated ERISA or any other law.

12. A plaintiff seeking to bring an ERISA claim is required to exhaust his administrative remedies "with respect to [the] theories" that form the basis for relief and, absent such an exhaustion, cannot raise such theories for the first time in federal court. *Hess*, 502 F.3d at 729. Exceptions to the exhaustion requirement are made "where there is a lack of meaningful access to review procedures . . . [or] if pursuing such internal remedies would be futile." *Id.* (internal quotations omitted)(quoting *Ruttenberg v. United States Life Ins. Co.*, 413 F.3d 652, 658-59 (7th Cir. 2005)); *see also Stark v. PPM America, Inc.*, 354 F.3d 666, 671 (7th Cir. 2004)(stating in ERISA case that "[e]xhaustion of plan remedies is favored because the plan's own review process may resolve a certain number of disputes; the facts and the administrator's interpretation of the plan may be clarified for the purposes of subsequent judicial review; and an exhaustion requirement encourages private resolution of internal employment disputes").

13. Corbisiero failed to exhaust his administrative remedies in regard to the estoppel arguments that form the basis of Counts V and VI. Corbisiero also failed to exhaust his administrative remedies in regard to the argument that the non-solicitation provision in the CSP Agreement was overbroad and lacked

consideration. Corbisiero has not shown that any exception to the exhaustion requirement is applicable in this case. Thus, Corbisiero is precluded from raising such arguments for the first time in this court.

14. Even if Corbisiero was not precluded from raising his argument regarding the scope of the non-solicitation provision in the CSP Agreement, the scope of the non-solicitation provision in the CSP Agreement was limited and not overbroad or unenforceable, and was reasonably tailored to protect BOA's interests. *Millard Maintenance Service Co. v. Bernero,* 566 N.E.2d 379, 384 (Ill. App. Ct. 1990)(stating that "[a] post-employment covenant will be enforced if it has reasonable terms" and "[a] covenant must be 'reasonably necessary to protect the interests of the employer'")(quoting in part *McRand, Inc. v. van Beelen*, 486 N.E.2d 1306 (Ill. App. Ct. 1985). There was also consideration to support the CSP Agreement.

15. Even if Corbisiero was not precluded from raising his estoppel arguments, Corbisiero has not pointed to any knowing misrepresentation made by Defendants in writing that would have warranted reasonable reliance to his detriment. Corbisiero was never promised that he would be subject to the ABN Severance Plan forever, even if events such as the purchase of LaSalle's parent company occurred. Nor was Corbisiero ever promised that he would never be required to sign a non-solicitation agreement. *See, e.g., Kannapien v.*

*Quaker Oats Co.*, 507 F.3d 629, 636 (7th Cir. 2007)(stating that "[a]s a result, in order to prevail on an estoppel claim under ERISA, [the court] ordinarily require[s] that plaintiffs show: (1) a knowing misrepresentation; (2) made in writing; (3) reasonable reliance on that representation by them; (4) to their detriment").

16. The Notification Letter was not a separate ERISA plan or a one-time bonus plan as Corbisiero contends. Nor does the Notification Letter provide guarantees as to severance eligibility. The Committee reasonably concluded that the "guarantee" pointed to by Corbisiero in the Notification Letter related "to the bonus value for which an associate would be eligible in the event his or her employment was terminated due to a reduction in force." (AR 6). This meant that "if LaSalle associates were terminated as a result of position elimination before the end of the performance year, they generally would be eligible for a pro rata share of CIP if they otherwise met all of the considerations to receive severance pay, including signing a severance agreement." (AR 6). There was no "guaranty" of severance eligibility in the Notification Letter, and thus the Notification Letter did not preclude BOA from requiring Corbisiero to sign the CSP agreement in order to receive severance benefits. Count IV, which is premised on the belief that the Notification Letter was a separate ERISA plan, is therefore is without merit. Count VI, which is premised on the perceived guarantee in the Notification

Letter, is also without merit.

17. Therefore, we find in favor of Defendants on the remaining Counts I, IV, V, and VI.

## CONCLUSION

Based on the foregoing analysis, we find in favor of Defendants on Counts I, IV, V, and VI. We hereby direct the Clerk to enter judgment of the Court in favor of Defendants on Counts I, IV, V, and VI.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: March 16, 2010